# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,    :    Case No. 3:15-cr-170

                                  District Judge Thomas M. Rose
- vs -                              Magistrate Judge Michael R. Merz

DAVID PATE,

                Defendant.    :

## REPORT AND RECOMMENDATIONS

This criminal case is before the Court upon Defendant's pro se Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 26). On the Court's Order (ECF No. 27), the United States has filed a Response or Answer (ECF No. 34). In the Order for Answer, the Court set a date for Defendant to file a reply to the Answer of twenty-one days after the Answer was filed (ECF No. 27, PageID 109). The Government's Answer was filed December 20, 2016, making Defendant's reply deadline January 13, 2017.[1] No reply has been filed and the time for filing one has now expired.

Pate pleads two grounds for relief: ineffective assistance of trial counsel and judicial abuse of discretion (ECF No. 26, PageID 89-90).

---

[1] Twenty-one days plus an extra three days because Defendant was served by mail. Fed. R. Civ. P. 6.

The record in this case shows Pate was charged by Complaint with possession of heroin with intent to distribute and possession of a firearm after having been convicted of a felony (ECF No. 1, PageID 1). On the same day the Complaint was filed, Pate appeared before United States Magistrate Judge Sharon Ovington and was appointed as counsel Assistant Federal Defender F. Arthur Mullins (Minutes, ECF No. 4, 6). The very next day Assistant Federal Defender Thomas Anderson filed a Notice of Substitution of Counsel with no indication of any "irreconcilable differences" between Mr. Pate and Mr. Mullins (ECF No. 7). Pate waived preliminary hearing (ECF No. 8) and was bound over to the grand jury upon a finding by Magistrate Judge Ovington that there was probable cause to believe Pate had committed both offenses charged in the Complaint (ECF No. 9).

On the same day that the case was assigned to Judge Rose, Pate agreed to proceed by way of Information, waiving his right to grand jury indictment (ECF No. 11). On December 29, 2015, Pate entered into a written plea agreement in which he agreed to plead guilty to the gun charge (ECF No. 12). As part of the Plea Agreement, he admitted the facts supporting the conviction (¶ 1), gave up his right to a trial and associated trial rights (¶ 2), agreed that the maximum sentence he could receive was ten years in prison (¶ 3), agreed he understood there would be a pre-sentence investigation which would result in a Sentencing Guidelines recommendation (¶ 6) and finally that

> By signing this agreement, the Defendant acknowledges that he has read this agreement, that he has carefully discussed the terms of this agreement with his attorney, and that he understands and accepts those terms voluntarily, without duress or coercion, and of his own free will. Defendant is pleading guilty because he is in fact guilty. Defendant further agrees that he is satisfied with the representation of his attorney in this matter.

*Id.* at ¶ 11. Not only is the Plea Agreement written in clear and understandable English, but Judge Rose went over it in detail in open court (ECF No. 32).

Because of prior convictions, Pate would have been eligible to be classified as a career offender if he had been convicted of the drug possession count and this is why the Probation Department recommended a ten-year sentence (Defendant's Position with Respect to Sentencing, ECF No. 18, PageID 44). Instead, Pate argued he should receive a five-year sentence even though that would be three years longer than he had received for any of his prior convictions. *Id.* Mr. Anderson argued at great length why a sixty-month sentence was adequate to fulfill the purposes of federal sentencing. *Id.* In connection with the sentencing memorandum, Pate wrote a long letter to the Court which says nothing about any promise of a sixty month sentence. Instead, he minimizes his prior convictions and emphasizes his desire to be with his son.

During the actual sentencing hearing, Mr. Anderson made no formal objections to the presentencing investigation report, but asked Judge Rose to consider the sentencing memorandum materials. Judge Rose found, without objection, that Pate was on post-release control from his most recent state court conviction when he committed the offense for which he was being sentenced (Transcript, ECF No. 33, PageID 199). He found, again without objection, that the sentencing guideline range in the case was 120 to 150 months, although the range was capped at the statutory maximum of ten years. *Id.* at PageID 200. Mr. Anderson argued eloquently for a sixty-month sentence.

During his allocution, Mr. Pate apologized for his behavior and took responsibility for it. *Id.* at PageID 215. He made no claims of poor representation, but instead told Judge Rose he was a "quiet, reserved, caring, loving and respectful gentlemen." *Id.* at PageID 216-17. He asked for "leniency and a sentence nowhere near the maximum sentence." *Id.* at PageID 217. He

continued "I want to give thanks to Mr. Anderson for doing the best he could defending me." *Id.* Judge Rose then imposed a sentence of ninety months. *Id.* at PageID 227. Pate made no protest at all about having been promised a sixty-month sentence. Pate took no appeal.

**Ground One:  Ineffective Assistance of Counsel**

In his First Ground for Relief, Mr. Pate claims he received ineffective assistance of trial counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance*, 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

4

> conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.  Although Mr. Pate acknowledges that *Strickland* provides the standard for an ineffective assistance of trial counsel claim, he fails to provide evidence to meet either prong of the standard.

Mr. Pate claims Mr. Anderson's first deficient performance was failure to explain the Hyde Amendment provision in the Plea Agreement under which Pate admitted he was not a prevailing party.  But at the time the plea was taken, Pate said he had no questions about the meaning of the Plea Agreement and he does not now say how he was prejudiced by his acknowledgement that he was not a prevailing party.

Pate claims he advised Anderson of possible defenses such a failure to the Dayton police who arrested him to give him *Miranda* warnings, failure of the police to have a search warrant for the car from which he fled after wrecking it and in which the drugs and gun were found; and use of a Taser and failure to take Pate to the hospital by the same police officers.  As the United States points out in its Answer, none of these would have constituted a defense because none of

5

his statements were used against him at trial, the officers did not need a search warrant under the circumstances, and use of a Taser did not render his plea somehow involuntary.

Mr. Pate accuses Mr. Anderson of not "establish[ing] quality rapport" with Pate and not spending the time with him required by some undisclosed Department of Justice manual. The Sixth Amendment does not require either of these things.

Pate claims Anderson pressured him into accepting the plea by saying "If you accept the plea agreement here and now the term of imprisonment will be less than what the presentence report will indicate later." (Motion, ECF No. 26-1, PageID 103.) But that prediction was completely accurate: the ninety-month sentence was two-and-one half years less than what the Presentence Report recommended.

Pate claims Anderson was ineffective for failing to file a notice of appeal. *Id.* But he nowhere says he asked Anderson to do so.

Where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27. To put it another way, a defendant cannot stand before a federal court, under oath, and swear that he understands the plea agreement, that he is guilty of the crime, and that he is satisfied with the representation he received, and come back later on a § 2255 motion and repudiate all of those sworn representations.

Mr. Pate's claim of ineffective assistance of trial counsel is without merit.

**Ground Two:  Judicial Abuse of Discretion**

Mr. Pate argues Judge Rose abused his sentencing discretion "in the use of an enhancement increasing the term of imprisonment upon the Defendant in clear opposition to the presentence report, without the government's written notice to all parties concerned."  (ECF No. 26-1, PageID 104.)  Mr. Pate is just wrong about what happened.  The PSR recommended and Judge Rose found a base offense level of 24 (Transcript, ECF No. 33, PageID 197).  The Judge then added six points for the specific offense characteristics found by the Probation Department.  *Id.*  at PageID 197-98.   There was simply no enhancement that had not been recommended by the PSR and Pate made no objections to the PSR as presented to the Court.

Pate also claims Judge Rose did not deal with the conflict between him and Mr. Anderson (ECF No. 26-1, PageID 104-05).  But Pate points to no place in the record where he brought any such conflict to Judge Rose's attention.  During the plea colloquy and in the Plea Agreement itself, he advised the Court he was satisfied with the representation.  And again at sentencing, he thanked Mr. Anderson for the defense he had provided.

Mr. Pate claims Anderson told him that the maximum sentence he would receive was sixty months.  That, of course, was the mandatory minimum sentence for the offense of conviction.  But, again, this claim is completely at odds with Pate's sworn statement during the plea colloquy that there were no such promises; his statement in the Plea Agreement that he understood he could receive the maximum of ten years; and his complete failure to protest at or before sentencing that any such promise had been made. Pate now says in his Motion that he was

told by Anderson to lie during the plea colloquy and that he was willing to lie under oath. Now he says the exact opposite under penalty of perjury. Which of these two completely contradictory sworn statements is the Court to believe? If Pate was admittedly willing to lie to get the benefit of a plea bargain, why should he be believed now when he wants to get out of the bargain?

In any event, the facts alleged under Pate's Second Ground for Relief do not show any abuse of discretion by Judge Rose. If anything, he exercised his discretion to give Mr. Pate a sentence substantially less than both the Probation Department and the Government recommended.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Motion to Vacate be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 27, 2017.

s/ *Michael R. Merz*  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).